OF THE

## STATE OF IOWA

AT

## DES MOINES, JANUARY, 1914, TERM

AND IN THE SIXTY-EIGHTH YEAR OF THE STATE.

---

ARTHUR SHADDEN and JOSEPHINE SHADDEN, Appellees, v.
D. E. BUTLER and H. S. TERRY, Appellants.

**Abuse of process:** EVIDENCE. In an action for abuse of process in the
1 levy of an attachment the defendant may show that he had good
grounds for proceeding in that manner, that he endeavored to set-
tle the claim with plaintiff after the levy, and what plaintiff had
stated when he made a bill of sale of the property levied upon, as
bearing on the questions of probable cause and of malice. De-
fendant should also have been permitted to show in this case
that plaintiff made a bill of sale to the property levied upon,
signed by himself alone, in resistance to his claim that the prop-
erty was exempt.

**Same:** PROBABLE CAUSE: EVIDENCE. In actions for abuse of process.
2 the plaintiff must prove want of probable cause; and this cannot
be shown by proof of malice alone, although malice may be in-
VOL. 164 IA.—1

ferred from want of probable cause. The instructions in this case were erroneous in failing to require proof of probable cause.

Same: MALICE: INSTRUCTIONS. Instructions submitting the question
3   of malice, in an action for abuse of process, bearing simply on the question of exemplary damages and not on the question of plaintiff's right of recovery, were erroneous.

*Appeal from Pottawattamie District Court.*—HON. E. B. WOODRUFF, Judge.

SATURDAY, DECEMBER 13, 1913.

ACTION at law to recover damages for abuse of process. Trial to a jury; verdict and judgment for plaintiff, against both defendants, but in separate amounts, and defendants appeal.—*Reversed.*

*John P. Organ,* for appellants.

*H. L. Robertson,* for appellees.

DEEMER, J.—Defendant Butler sued out a writ of attachment from justice's court against the plaintiffs to satisfy a debt for the sum of $64.51. The writ was delivered to defendant Terry, who was a constable, for service, and he proceeded thereunder to levy upon a horse, as the property of the defendants, in the suit, or one of them. The grounds for the attachment were that defendants were about to remove the property out of the state without leaving sufficient for the payment of their debts; that they had disposed of their property with intent to defraud their creditors; that they were about to remove permanently out of the state, and refused to pay Butler, the plaintiff in suit. Bond was given for the attachment as by law provided. Shortly after the levy, Arthur Shadden served notice upon the constable demanding the release of the horse, because it was exempt; and at the trial of the case before the justice he moved for the release of the

property attached because it was exempt; but the justice denied the motion and held the property not exempt. An appeal was taken by Shadden. A few days before the commencement of the attachment suit, Arthur Shadden alone made a bill of sale of the animal in controversy to one Foote; and some time after the case was tried, before the justice, Shadden's wife signed the bill of sale, and on the same day Foote served notice on Butler and the constable to release the property. Butler either gave bond to or deposited cash with the constable to protect him, and the horse was sold upon execution for the sum of $120. Before acquiring the animal in controversy, Shadden owned two horses which he had used in his business of teaming and farming. At the time of the levy, he made no claim that the mare levied upon was exempt. On the contrary, he turned her over to the constable with the remark that he did not have a "dollar in the mare." Both Butler and the constable tried to have Shadden settle the claim before suit, but Shadden refused to do so and after the levy Butler renewed his efforts but without success. Plaintiff commenced this action in January of the year 1912. The original petition contained two counts, one being in the form of an action on the attachment bond given by Butler, to which the constable was made a party, and the other an action against the two defendants for malicious abuse of process. The defendants filed separate answers, which were, in effect, general denials. Before the trial commenced, defendants filed a motion to require plaintiffs to elect upon which count they would proceed, and, pursuant to the motion, the following order was made and election entered of record: "The motion to require plaintiff to elect as to which of the defendants he will proceed against is at this time fully submitted, and the court requires plaintiff to elect as to which cause of action set out in the petition he will proceed upon. And the plaintiff in open court elects to proceed upon the cause of action for abuse of process set out in the petition." The case then went to trial upon the issues stated after the election was made,

resulting in a verdict for plaintiffs against both defendants, the amount awarded as against Butler being $325, made up of $175 actual and $150 exemplary damages and against Terry $75, all exemplary damages. Defendants each filed a motion for a new trial, and Butler's motion was overruled, but Terry's was sustained. Butler alone appeals.

I. Defendant Butler sought to show that he had good grounds for suing out the writ of attachment; that he not only tried to settle his account with Shadden after the levy; but that he had others make the attempt, all without success. He also offered to show what plaintiff Shadden said to the justice when he made the bill of sale of the animal to Foote. Much, if not all, of this testimony should have been received. In an action for abuse of process, it must be shown not only that the process was unwarrantable, that is, that it was issued and levied unlawfully, or without probable cause, but that it was also malicious, and any facts which tend to rebut either of these propositions are admissible in evidence. If then defendant Butler had reasonable grounds to believe that the mare was subject to attachment either because Shadden was about to leave the state, so as to deprive him of the right to claim his exemptions, or that he (Shadden) had selected other property as exempt by making a bill of sale of one of three animals, any one or two of which he might have claimed as exempt; these facts or either of them would bear not only on the question of probable cause, but also on the question of malice, and it seems to us that such testimony should have been received. The testimony given over defendant's objections that Butler deposited with the constable cash in lieu of a bond to protect the constable because of the levy is very doubtful in our minds, although if properly limited it might perhaps be admissible, as showing that Butler, after being advised of plaintiff's claim of exemption, nevertheless proceeded with the levy.

As against this, however, defendant should have been

1. ABUSE OF PROCESS : evidence.

permitted to show that plaintiff made a bill of sale, whether absolute or as security, signed by himself alone, tending to show that he did not regard the animal as exempt; for, if exempt, his wife must have joined with him in the bill of sale in order for it to become effective.

In a case heretofore decided by this court, it was held by the majority that the making a bill of sale by the husband alone on one horse or one team, when he had three, was an election by the husband not to claim the one sold (or mortgaged) as exempt. See *Grover v. Younie*, 110 Iowa, 446.

II. Notwithstanding the election of plaintiffs to hold the defendants on the theory of abuse of process, the trial court gave the following, among other instructions:

(6) The plaintiffs must also show by the greater weight of the evidence that he was a teamster or farmer and habitually earned his living and that of his family by the use of a team of horses, and, if he has shown such fact, then he is entitled to claim exempt from levy the team with which he did habitually earn such living, and the plaintiff, under the law, was entitled to make his own selection of such team if at the time of the levy he owned more than two horses. The defendants were not authorized by law to make such selection for him. He alone had that right at any time before sale.

(10) As far as the defendant Butler is concerned, if he directed the constable to levy on the mare in question, and you find that said mare at the time was exempt from levy, and that when plaintiff claimed his exemption of said mare, if he did so claim it, he refused to have the levy released, but caused the said mare to be sold by the constable, then he would be liable for the value of the said mare in this action.

(11½) In regard to the alleged malice of the defendant Butler, if you find from the evidence that he directed the constable to levy and sell the mare in question through a spirit of feeling of ill will towards the plaintiffs or either of them, or through a desire to injure, harass, or annoy them or either of them, or to take and sell the mare in question contrary to law, such acts, if shown, would be sufficient to justify you in finding that he acted with malice. It is not necessary to act maliciously that the said defendant Butler must have been 'mad' at the

plaintiffs or either of them, as that word is generally understood. On the other hand, if you find from the evidence that the defendant Butler was simply attempting to collect a debt against the plaintiff, and that he caused a levy and sale of the mare in question in the belief and with the understanding on his part that said mare was not exempt from execution, and therefore he had a right to levy and sell her, and in doing so he was not actuated by any hostile motives or desire or purpose to injure the plaintiffs or either of them, then it cannot rightfully be said that he acted maliciously, even though you may find, under the evidence shown in this case, guided by the instructions of the court, that said mare was in fact exempt from execution and sale. The mere fact that a levy and sale of exempt property was made is not sufficient alone to show malice.

(12) The burden is upon the plaintiff to show that the defendants or either of them acted maliciously, and, if the plaintiff has failed to show such fact, then plaintiff can recover nothing for exemplary damages, even though it appears that the mare in question was exempt from execution.

(15) If the plaintiff has failed to show that he was a married man and the head of a family and entitled to claim an exempt team, and that he owned the mare in question, and that she was exempt, then he cannot recover in this action. But if he has shown all of such matters, then he is entitled to a recovery as against both defendants for the fair and reasonable market value of said mare at the time of the levy with 6 per cent. interest to this date.

(16) If you find that plaintiffs are entitled to recover for the value of said mare, then you may also allow the plaintiffs exemplary damages, if you find that the defendants acted maliciously as heretofore explained. Exemplary damages are allowed to punish the one committing a wrongful act, but in no case can they be allowed unless actual damages are first shown. You are not required to allow exemplary damages, but you may do so if you find the evidence justifies it as before explained; that is, if you find defendants or either of them acted without malice, and the amount which you may allow rests in your sound judgment and discretion, and the amount which you may find for either actual damages or exemplary damages cannot exceed the amount therefor as claimed in the petition, and if you find that either one of the defendants did not act with malice, then as to such de-

fendant or defendants you should allow nothing for exemplary damages.

The rule for this state, as to the malicious abuse of process, is as follows:

The authorities are strong, if not uniform, that the unlawful use of the process must be malicious, and without probable cause; the rule being akin, in that respect, to actions for malicious prosecution. In fact, the two actions are of the same general character, the one being the malicious prosecution of a suit and the other the malicious use of process issued in aid of a proceeding, either pending or determined. Keeping in view that such an action is warranted when the process of the court is maliciously and without probable cause misused or misapplied to accomplish some purpose not warranted or commanded by the writ, we are in position to apply the rule to the facts in this case. The property in question is by law exempt from execution, which means that it is not to be seized upon execution for the debts of the owner. Code, section 3072. Hence such a levy is not warranted under the law. The execution, if against the property of the judgment debtor, requires the sheriff 'to satisfy the judgment and interest out of property of the debtor subject to execution.' Code, section 3033. It is thus seen that nothing in the law nor in the face of the process warrants the seizure of exempt property. But where it is done, more than the unwarrantable act is required. It must be done maliciously, and without probable cause. (*Nix v. Goodhill*, 95 Iowa, 285.)

By the instructions given the question of probable cause was eliminated, and it is well settled by all the authorities, we think, both in actions of malicious prosecution and for the 2. SAME: probable cause: evidence. malicious abuse of process, that absence of probable cause must be shown. Such a finding cannot be made from proof of malice alone, although malice may be inferred from proof of want of probable cause. The trial court evidently overlooked the fact that want of probable cause must be shown and submitted the question as to whether or not the property was in fact exempt in the

hands of Shadden. In ruling on the admission of testimony, this was evidently the predominant thought in the mind of the court; for the testimony was all directed to the question of exemption in fact.

Moreover, in the fifteenth and sixteenth instruction, before quoted, it is apparent that the court submitted the question of malice, not as bearing on plaintiff's right to recover, 3. SAME: malice: but on the amount of his recovery; that is, instructions. as bearing upon the question of exemplary damages. In answer to special interrogatories, the jury found that both defendants acted maliciously and an award of exemplary damages was made accordingly. Indeed, exemplary damages were awarded against Terry, although no actual damages were found as to him. The verdict was set aside as to Terry, and, of course, he has no cause for complaint now.

Other questions are presented which do not demand attention. For the errors pointed out, the judgment must be, and it is, *Reversed.*

WEAVER, C. J., and GAYNOR and WITHROW, JJ., concur.